**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT PADUCAH**
**CIVIL ACTION NO. 5:08CV-P51-R**

**RICHARD K. SCOTT**                                                    **PETITIONER**

**v.**

**BECKY PANCAKE**                                                      **RESPONDENT**

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

      This matter is before the Court on Richard K. Scott's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (DN 1). On January 23, 2004, Scott pleaded guilty, but mentally ill, to the charges of capital murder, first-degree burglary, custodial interference, and fourth-degree assault. With the assistance of counsel, Scott now argues that his constitutional rights were violated because he was not competent to enter the plea. The threshold issue in this case is whether this action is timely under 28 U.S.C. § 2244(d)(1) and (2).

      Upon review, the Magistrate Judge concluded that the petition was timely. Respondent objects to the Magistrate Judge's conclusions. The Court has reviewed the record below, the Magistrate Judge's Report and Recommendation, Respondent's objections, Petitioner's response, and the relevant statutes and case law. After doing so, the Court concludes that on its face, the petition appears time barred. However, Scott has raised a colorable claim that equitable tolling applies in this case based on his alleged mental incompetency. Because Scott's competency is also the sole substantive matter at issue, the Court concludes that an evidentiary hearing addressing both Scott's competency to enter the guilty plea as well as to timely bring the current petition would be the most judicially economical manner in which to proceed. Before

setting a hearing date, however, the Court will order Respondent to answer the petition in full and to provide the Court with a complete record of the state court proceedings.

## II.  FACTS AND PROCEDURAL HISTORY

On December 26, 2001, Scott killed his ex-wife's husband, Joel Gifford, after Gifford tried to stop him from forcibly taking Scott's minor child from Gifford's residence without permission.  The police report reads:

> Richard Scott went to his ex-wife's house at 30 Moores Rd. in Lowes, Ky and broke in the front door.  He took his son from the couch where he was sleeping and put him in his truck. He obtained a gun and began shooting at Joel Gifford, his ex-wife's current husband. He then took a shotgun and shot Mr. Gifford through the trailer wall. He then took another gun and shot at him. He then took a .22 caliber rifle and went into the trailer and shot him at very close range approximately 11 times in the head. As he was doing the shooting, his son came back on the porch and entered the house and was in immediate danger along with his mother. The mother, Terry, and Richard got into a struggle as 8 year old Alex was trying to get back into the house. Richard at this time assaulted Terry. Richard then left the scene and returned to his house.

(DN 1 at 4) (citing TR1 58).  Scott's mental state became an issue almost immediately.  At least five different mental health evaluations were performed on Scott between the time of his arrest and his sentencing in 2004.  The reports indicate that sometime prior to the crime Scott began hearing voices that he attributed to God and/or the Devil, that the voices led him to kill the victim, and that even at the time of his sentencing he was still hearing the voices.  The reports also indicate that while Scott understood the legal system, he was not motivated to assist in his own defense because he desired an outcome that would quickest effectuate his death.  The reports also indicate, however, that in a therapeutic environment and when receiving medications, the voices could be controlled and Scott thereby rendered competent to assist in his defense.

On September 9, 2003, Scott was committed to the Kentucky Correctional Psychiatric Center for more inpatient care. He remained at that facility until November 18, 2003. While there he was evaluated by Dr. Steven Simon. As to Scott's ability to assist in his own defense, Dr. Simon wrote:

> When Mr. Scott was asked how he might be able to explain his way out of these charges, he continued to express a sense of bewilderment as to what actually transpired. Although the details he described are consistent with what he had previously related, he was now able to do so in a more calm, detached and constructive manner. Mr. Scott related again that he felt he was "spirited" or possessed by an entity which "took over my body and killed this man." He stated that the voices in his head directed his behavior, stating that "they do strange and crazy things." When asked what he thought his lawyer should concentrate on in order to best defend him, he stated "I couldn't control it because if I did, I wouldn't have killed a man. I ain't hurt nobody in my life. I ain't been in a fight or argument since I was in school." Again, he felt he was "spirited" by God, that God "come into my body" and this resulted in the shooting incident.
>
> . . .
>
> [A]t this point, with the assistance of competent legal counsel, compliance with effective psychotropic medications and a reasonably supportive residential environment, it is felt that Mr. Scott is competent to proceed.

(DN 1) (citing TR1 576-58). This was the last competency evaluation of Scott before the trial court accepted his guilty plea in January 2004.

However, Scott did not remain in a "supportive residential environment" prior to his plea and sentencing. He was returned to a county jail facility in November 2003 where apparently he did not receive any therapy and regularly resisted his medications. At the time of his plea, Scott indicated to the judge that he was hearing voices repeatedly in his head saying "God killed the devil." Current counsel has now allegedly discovered that Scott's sole motivation for accepting the plea was based on his belief that he would be paroled after twenty years at which time he

planned to commit suicide. He believed that this would lead to a quicker death than if he was sentenced to death by a jury because of the lengthy appeals involved in a death sentence.

Scott was sentenced by the trial court on March 15, 2004. After his sentencing, Scott was incarcerated at Kentucky State Reformatory. Counsel avers that Scott has not received any therapeutic inpatient mental health treatment since his incarceration or had any subsequent competency evaluations.

Having entered a guilty plea, Scott did not seek direct appeal of his sentence. Instead, sometime after his incarceration a legal aide reviewed Scott's case and prepared an RCr 11.42 motion for Scott to file in state court. That motion was filed on August 9, 2005, one year, four months, and twenty-five days after his judgement of conviction was entered by the trial court. Upon review of Scott's RCr 11.42 motion, on August 23, 2005, the trial court appointed counsel to represent Scott in those proceedings. Counsel amended the RCr 11.42 motion after some preliminary factual investigation.

Without conducting an evidentiary hearing, the trial court denied Scott's RCr 11.42 motion. Scott appealed the denial to the Kentucky Court of Appeals. The Kentucky Court of Appeals affirmed the trial court. The Kentucky Supreme Court entered an order denying Scott's motion for discretionary review on February 13, 2008. Scott then filed his petition for habeas relief in this Court on March 31, 2008.

This Court reviewed the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review, the Court directed Respondent to answer the petition and submit portions of the state court record pertinent to the issues raised in

the petition and answer. The Court then referred the petition to the Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) for appropriate hearings, if any, findings of fact, and recommendations for disposition.

Respondent then partially answered the petition asserting that it was time barred and submitted portions of the record dealing only with the timeliness of the petition. Scott has moved to compel Respondent to fully answer the petition and to produce a full copy of the record. Scott also requests an evidentiary hearing.

On September 18, 2008, the Magistrate Judge issued a Report and Recommendation concluding that the petition was timely under 28 U.S.C. § 2244(d)(1)(A) and recommending that Respondent be directed to answer the petition in full and to produce a complete copy of the trial court record. Respondent filed a timely objection arguing that the Magistrate Judge's conclusion that the petition was timely under § 2244(d)(1)(A) was based on his incorrect belief that this case came before the Kentucky appellate courts on direct review. Scott filed a response to the objections conceding that § 2244(d)(1)(A) is inapplicable in this case. Scott asserts, however, that the petition is timely under § 2244(d)(1)(D), or alternatively, that the principles of equitable tolling apply in this case.

### III. ANALYSIS

When the parties to an action submit objections to the Magistrate Judge's Report and Recommendation, the district court reviews the record *de novo*. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the provisions of the AEDPA apply. *Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000). The AEDPA sets forth a statute of limitations for state prisoners seeking release from custody. The statute provides as follows:

> (d)(1) -- A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) and (2).

The Magistrate Judge concluded that the petition was timely under § 2244(d)(1)(A):

> ***The petitioner filed a timely direct appeal with the Kentucky Court of Appeals*** alleging, inter alia, that he was incompetent to enter voluntary and intelligent pleas. On or about November 2, 2007, upon direct review, the Kentucky Court of Appeals held that the trial court did not err in finding the petitioner to be competent to enter pleas of guilty. *Scott v. Commonwealth*, 2007 WL 3227041. On or about February 13, 2008, the Supreme Court of Kentucky denied discretionary review. *Id.* The present petition was filed on or about March 31, 2008. The magistrate judge concludes that the petitioner's 1-year period of limitation commenced running at the earliest on February 13, 2008, the "date on which the judgment became final by the conclusion of direct review" as contemplated by 28 U.S.C. § 2244(d)(1)(A).

6

> Therefore, the petition was timely filed on March 31, 2008, and is not subject to summary dismissal.

(DN 21) (emphasis added).

As explained, however, Scott did not file a direct appeal of his sentence. He first challenged his sentence by filing an RCr 11.42 motion in the trial court on August 9, 2005. Scott's judgment of conviction and sentence were entered on March 15, 2004. Therefore, at the latest, the habeas clock began to run on April 14, 2004, and expired a year later on April 14, 2005. Scott did not file his RCr 11.42 motion in state court until August 9, 2005, almost four full months after the statute had technically expired. Additionally, the subsequent filing of the RCr 11.42 motion did not restart the clock. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not . . . revive the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.") (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) (internal quotation marks omitted)). Thus, it is clear that unless one of the other § 2244(d)(1) subsections or equitable tolling applies, Scott's petition is untimely under § 2244(d)(1)(A).

Scott argues first that his petition is timely under § 2244(d)(1)(D). That subsection provides that a habeas petition is timely so long as it is filed within a year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Scott argues that application of this section is appropriate because his "mental illness prevented him from ascertaining that he had the claim advanced by undersigned counsel." The problem with this argument is that the factual predicate for the

claims existed at the time Scott's sentence was entered; he just lacked the ability to appreciate the legal significance of the facts or the desire to use them to defend himself. "The trigger in § 2244(d)(1)(D) is (actual or imputed) discovery of the claim's 'factual predicate,' not recognition of the facts' legal significance." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). Moreover, whether due diligence was exercised is determined objectively in relation to what a reasonable person would have discovered under the circumstances. *See, e.g., Humphreys v. United States*, 238 F. App'x 134, 138 (6th Cir. 2007); *Simpson v. Ludwick*, No. 1:04-cv-141,1:01-cr-193, 2008 U.S. Dist. LEXIS 87390 ( E.D. Mich. Oct. 29, 2008). Thus, because the facts comprising Scott's claim were in existence from the date of his sentencing and could have been discovered by him (or a reasonable person) through the use of due diligence, application of section § 2244(d)(1)(D) does not save his petition.

However, Scott also argues that equitable tolling should apply to save his petition. Since the one-year limitations period under the AEDPA "is not jurisdictional a petitioner who misses a deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *See Griffin v. Rogers*, 399 F.3d 626, 631 (6th Cir. 2005). In order to be entitled to equitable tolling, Scott has "the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). Scott alleges that he satisfies both elements as (1) his mental condition kept him from timely asserting his rights and (2) since the time he was provided with a legal aide and subsequently counsel, he has been diligently pursing his rights. Very recently, the Sixth Circuit summarized the applicability of equitable tolling with respect to claims involving mental disease:

> Although the mental incapacity of the petitioner can warrant the equitable tolling of the statute of limitations, the district court properly determined that mental incompetence is not a *per se* reason to toll a statute of limitations. *See Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), *overruled in part on other grounds by Carey v. Saffold*, 536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed. 2d 260, (2002); *Lake v. Arnold*, 232 F.3d 360, 371 (3d Cir. 2000). In order to be entitled to equitable tolling the petitioner must make a threshold showing of incompetence and must also demonstrate that the alleged incompetence affected her ability to file a timely habeas petition. *See Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003) ("Where a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitably tolled."); *Nara*, 264 F.3d at 320 ("[T]he alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition."); *Nowak v. Yukins*, 46 F. App'x 257, 259 (6th Cir. 2002) (holding that the incapacity of the petitioner can warrant the equitable tolling of the statute of limitations where the petitioner makes a threshold showing of incompetence and demonstrates that the incompetence affected her ability to file a timely habeas petition).

*McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008).

Scott has presented a colorable argument that equitable tolling applies in this case based on his alleged mental incompetency. The record in this case contains evidence that tends to suggest that Scott may not have been competent after sentencing due to the fact that he was not placed in a "reasonably supportive residential environment" and that he was not able to rationally assist himself in pursuing his rights because due to the nature of his mental illness he was obsessed with achieving an outcome that would lead to his death.

Scott has asked for an evidentiary hearing on the statute-of-limitations issue (DN 12). A court may conduct an evidentiary hearing to determine whether equitable tolling applies. *See Keenan v. Bagley*, 400 F.3d 417, 422 (6th Cir. 2005) ("Whether this case presents one of those rare occasions in which equitable tolling under AEDPA is proper is an issue appropriately handled by the district court in the course of an evidentiary hearing."). Based on the record thus

9

far, the Court finds that there is a strong probability that an evidentiary hearing would allow Scott the opportunity to fully develop his claim of equitable tolling.

Additionally, a habeas petitioner is entitled to an evidentiary hearing on the substantive merits of his claim if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 459-60 (6th Cir.2001). The Court has reviewed the petition and finds that substantively it raises sufficient grounds for release and that the relevant facts concerning Scott's competency are in dispute. Since the issue in this case is Scott's mental incompetency, both to enter the plea and to timely pursue his rights, conducting an evidentiary on both the issue of equitable tolling and on the substantive claim is the most efficient way in which to proceed at this juncture. Before such a hearing is conducted, Respondent should fully answer the petition and submit all portions of the state court record pertinent to the issues in dispute.

### IV.  ORDER

Respondent's Objection to the Magistrate Judge's Report and Recommendation (DN 22) is **SUSTAINED** for the reasons explained in this Memorandum Opinion and Order.

Petitioner's motion for an evidentiary hearing (DN 12) is **GRANTED**. The Court will schedule the hearing at a later date after a telephonic scheduling conference with the parties.

Petitioner's motion to compel Respondent to answer the substantive merits of his petition (DN 13) is **GRANTED**. Respondent is **ORDERED** to answer the petition in full **within 30 days of the entry of this Order.**

Petitioner's motion to compel Respondent to provide a complete copy of the record is **GRANTED** (DN 14).  Respondent is **ORDERED** to produce a complete copy of the record **within 30 days of the entry of this Order.**

Respondent's motion to file a supplemental memorandum addressing Petitioner's equitable tolling argument (DN 17) is **GRANTED**.  The supplemental memorandum (DN 17, Part 3) is **DEEMED** filed.  The Court reviewed and considered the supplemental memorandum in full prior to entering this Memorandum Opinion and Order.

A telephonic scheduling conference to discuss issues related to the evidentiary hearing is set for **March 20, 2009, 10:00 a.m. CST.  The Court will place the call to counsel.**

Date:




cc:   Counsel of record


4413.008