UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:08CV-51-R

**RICHARD K. SCOTT**                                                                                    **PETITIONER**

v.

**BECKY PANCAKE**                                                                                        **RESPONDENT**

## MEMORANDUM OPINION

### I. INTRODUCTION

The petitioner, Richard K. Scott, filed this action pursuant to 28 U.S.C. § 2254. The parties agree that Scott's petition is untimely under 28 U.S.C. § 2244(d)(1), which states that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." However, because the timeliness provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) is not jurisdictional, it is subject to equitable tolling. *See Holland v. Florida*, – U.S. –, 130 S. Ct. 2549, 2560, 2562 (2010). Scott argues that his mental illness prevented him from complying with the AEDPA's time limits. He asks the Court to employ the doctrine of equitable tolling to excuse his tardiness in filing.

This Court granted Scott an evidentiary hearing on the equitable-tolling issue. The sole purpose of the hearing was to determine whether Scott could present the type of evidence necessary to justify equitable tolling. The hearing focused on Scott's mental state after his incarceration and how it affected his ability to file a habeas petition. After a careful review of the record, the Court concludes that Scott failed to demonstrate that his mental illness was the cause-in-fact of his failure to file a timely petition.

## II. FACTUAL AND PROCEDURAL HISTORY

On December 26, 2001, Scott killed his ex-wife's husband, Joel Gifford. The police report reads:

> Richard Scott went to his ex-wife's house at 30 Moores Rd. in Lowes, Ky and broke in the front door. He took his son from the couch where he was sleeping and put him in his truck. He obtained a gun and began shooting at Joel Gifford, his ex-wife's current husband. He then took a shotgun and shot Mr. Gifford through the trailer wall. He then took another gun and shot at him. He then took a .22 caliber rifle and went into the trailer and shot him at very close range approximately 11 times in the head. As he was doing the shooting, his son came back on the porch and entered the house and was in immediate danger along with his mother. The mother, Terry, and Richard got into a struggle as 8 year old Alex was trying to get back into the house. Richard at this time assaulted Terry. Richard then left the scene and returned to his house. (DN 1 at 4) (citing TR1 58).

Scott's mental state became an issue almost immediately after his arrest. Several different mental health evaluations were performed on Scott between the time of his arrest and his sentencing in 2004. The reports indicate that sometime prior to the crime Scott began hearing voices that he attributed to God and/or the Devil, that the voices told him to kill the victim, and that even at the time of his sentencing, he was still hearing the voices. The reports also indicate that while Scott understood the legal system, he was not motivated to assist in his own defense because he desired an outcome that would quickest effectuate his death. The reports also indicate, however, that in a therapeutic environment and when receiving medications, the voices could be controlled, and Scott thereby rendered competent to assist in his defense.

The Kentucky Court of Appeals recounted the events surrounding the trial court's ultimate assessment that Scott was competent to plead guilty:

> The trial court held a competency hearing on May 5, 2003, at which Dr. Steven Simon of the Kentucky Correctional Psychiatric Center (KCPC) testified. Dr. Simon

> testified that Scott had been at KCPC a year prior to the hearing, and upon his discharge, Scott was competent to stand trial. However, due to the passage of time since his last evaluation of Scott, Dr. Simon could not testify at the hearing as to Scott's competency at that moment. The trial court ordered an out-patient evaluation of Scott to determine his current competency.
>
> Scott was evaluated at the Pennyroyal Center by Dr. Robert Sivley, who on August 8, 2003, found that Scott was not competent to assist in his own defense. After Dr. Sivley issued his report, the trial court ordered Scott back to KCPC for more inpatient treatment. Scott was treated for another two months and was found to be competent by an evaluation done by Dr. Simon on November 18, 2003.
>
> On January 23, 2004, Scott entered a plea of "guilty but mentally ill" to all of the charges. The trial conducted a lengthy plea colloquy questioning both Scott and his counsel. The issue of competency was raised again during the colloquy. The trial court noted that the new evaluation by Dr. Simon had been completed and Scott was determined to be competent. Defense counsel advised the trial court that Scott was able to participate in his own defense. The trial court found Scott to be competent and also found that the plea was knowingly, voluntarily, and freely entered.

*Scott v. Commonwealth of Kentucky*, No. 2006-CA-001151-MR, 2007 WL 3227041, at *1 (Ky. Ct. App. Nov. 2, 2007).

The Graves Circuit Court sentenced Scott on March 15, 2004. Having entered a guilty plea, Scott did not seek direct appeal of his sentence. Instead, with the assistance of a legal aide, Scott filed a Kentucky Rule of Criminal Procedure (RCr) 11.42 motion with the Graves Circuit Court on August 9, 2005, one year, four months, and twenty-five days after his judgment of conviction was entered by the trial court.[1] Scott's main argument was that his conviction should be vacated because he was not competent to enter a guilty plea. Without conducting an evidentiary hearing, the trial court denied Scott's RCr 11.42 motion.

Scott appealed the denial to the Kentucky Court of Appeals. The Kentucky Court of Appeals affirmed the trial court rejecting Scott's competency claim as follows:

---

[1] The Graves Circuit Court subsequently appointed counsel to represent Scott.

3

> Scott argues that the trial court erred by finding him competent to enter a guilty plea. The general rule is that "there is no higher mental standard required to enter a guilty plea than there is to stand trial." *Conley v. Commonwealth*, 569 S.W.2d 682, 684 (Ky. App. 1978). A defendant must have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and have both a rational and factual understanding of the proceedings against him. *Thompson v. Commonwealth*, 147 S.W.3d 22, 32 (Ky. 2004) (citation omitted). The determination of competency is made under the preponderance of the evidence standard. *Id.* The trial court's determination of competency will not be disturbed on appeal unless it is clearly erroneous. *Id.* at 33. A determination is clearly erroneous if it is not supported by substantial evidence. *Id.* Further, appellate courts in Kentucky have recognized that "the trial court is in the best position to determine if there was any reluctance, misunderstanding, involuntariness, or incompetence to plead guilty." *Bronk v. Commonwealth*, 58 S.W.3d 482, 487 (Ky. 2001) (citation omitted). Here, the trial court's determination that Scott was competent to plead guilty was not clearly erroneous.
>
> For nearly two years, the trial court evaluated Scott's competency during numerous hearings and evaluations. In this period, Scott was under medical supervision and received medication. At the plea colloquy, the trial court questioned Scott and his counsel at length regarding his competency. The trial court's record reflects that Scott appeared composed and acted rationally in responding to the trial court's questions that he understood what rights he was waiving and understood the charges against him. Scott stated that his judgment was not impaired by his medication. In addition to his plea colloquy, Scott has been afforded numerous attempts to demonstrate his incompetency. Therefore, based upon the totality of the circumstances, we conclude that the trial court's findings that Scott was competent to enter a guilty plea was not clearly erroneous.

*Scott v. Commonwealth of Kentucky*, No. 2006-CA-001151-MR, 2007 WL 3227041, at *1-2 (Ky. Ct. App. Nov. 2, 2007).

Scott petitioned the Kentucky Supreme Court for discretionary review. The Kentucky Supreme Court entered an order denying Scott's motion for discretionary review on February 13, 2008. Thereafter, Scott filed his petition for habeas relief in this Court on March 31, 2008. Upon review the Court determined that the petition was untimely. Scott then argued that the court should apply equitable tolling on the ground that his mental incompetence prevented him from being able to comply with the AEDPA's time limits.

Upon review, the Court determined that Scott had presented a colorable claim of equitable tolling that justified an evidentiary hearing. The hearing was limited to Scott's mental condition after he was incarcerated and how it affected his ability to timely file a habeas petition. Scott testified on his own behalf at the hearing. Additionally, he called the following witnesses: 1) Dr. Robert Sivley, Sr., a psychologist who examined Scott in 2003 and again during the habeas proceedings; 2) Dr. Quinton Meek, a physician who has treated Scott during his incarceration; 3) Barry Scott, Scott's brother who is also incarcerated and was housed in a cell adjacent to Scott during much of the relevant time period ; and 4) Linda Anderson, Scott's mother. The respondent called the following witnesses: 1) Vincent Yustas, Scott's prior counsel; 2) Dr. Wayne Herner, a psychologist who saw Scott several times after his incarceration; 3) Dr. Robin Sublett, another psychologist that saw Scott after he was incarcerated; 4) David Hargrove, the Commonwealth's Attorney that prosecuted Scott; 5) Judge John T. Daughaday, the state court judge that presided over Scott's guilty plea and sentencing; 6) Dr. Steven Simon, a psychologist that examined Scott at KCPC on two occasions prior to Scott's guilty plea; and 7) Dr. Seema Singh, who saw Scott while he was in the CPTU at Kentucky State Reformatory (KSR).

## III. ANALYSIS

The AEDPA provides a one-year statute of limitations for filing a petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). "The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." *Day v. McDonough*, 547 U.S. 198, 205-06 (2006) (internal quotation marks omitted).

>The AEDPA's one-year statute of limitations begins to run from the latest of:
>
>(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).  "The time during which a *properly* filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added).

Scott concedes that his petition for habeas corpus, is technically untimely under § 2244(d)(1).  Nevertheless, he argues that this Court should use its equitable powers to toll the statute of limitations because his mental illness prevented him from filing a timely petition.

**A.     Legal Standard:  Equitable Tolling Due to Mental Impairment/Illness**

Because the AEDPA's statute of limitations is not jurisdictional, a federal court can use its equitable powers to review a petition that is technically untimely.  *See Holland v. Florida*, 130 S. Ct. at 2562 ("[W]e therefore join the Courts of Appeals in holding that § 2244(d) is subject to equitable tolling.").  "Federal courts have typically extended equitable relief only sparingly."  *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009) (quoting *Griffin v. Rogers*, 399 F.3d 626, 635 (6th Cir. 2005)).  "[A] litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some

6

extraordinary circumstance stood in his way."[2]  *Holland v. Florida*, 130 S. Ct. at 2562-63

(quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The equitable-tolling analysis is fact intensive, and "courts must consider equitable tolling on a 'case-by-case basis.'"  *Griffin v. Rogers*, 399 F.3d at 635 (internal citations omitted).

Mental illness is not a *per se* reason to toll the AEDPA's statute of limitations.  *McSwain v. Davis*, 287 F. App'x 450, 457 (6th Cir. 2008).  However, it can serve as the basis for equitable tolling in appropriate circumstances.  *Id.*  "Several courts of appeal have held that for the mental incapacity of a petitioner to warrant equitable tolling of a habeas statute of limitations, the petitioner must demonstrate that the incompetence affected his or her ability to file a timely habeas petition."  *Robertson v. Simpson*, 624 F.3d 781, 785 (6th Cir. 2010) (citing *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010); *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009); and *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003)).  In other words, the petitioner must affirmatively demonstrate "a causal connection between [his] mental illness and [his] ability to file a timely federal habeas petition."  *McSwain v. Davis*, 287 F. App'x at 457.

Even though the Sixth Circuit recognizes that mental illness can justify equitable tolling if the petitioner establishes a casual connection between his mental condition and his inability to timely file, *id.*, its law in this area remains largely undeveloped and offers very little in the way of precedential guidance.[3]  In prior cases, after extensively surveying the case law from other

---

[2] Prior to *Holland*, the Sixth Circuit considered five factors when determining whether to toll the statute of limitations.  *See Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001).  "However, *Holland* clarified that requests for tolling under AEDPA are reviewed under a two-part test."  *Robinson v. Easterling*, No. 09-5447, 2011 U.S. App. LEXIS 10416, at *7, n.1 (6th Cir. May 20, 2011).

[3] In *Holland v. Florida*, the Supreme Court noted that "courts of equity can and do draw upon decisions made in other similar cases for guidance."  130 S. Ct. at 2563.

jurisdictions, this Court has concluded that the Ninth Circuit has one of the most well-developed and articulate standards for evaluating equitable tolling on account of mental illness in the habeas context, and has adopted its framework. *See Carneal v. Crews*, No. 5:09CV-32-R, 2011 U.S. Dist. LEXIS 75063 (W.D. Ky. July 12, 2011) (collecting cases).

>  The Ninth Circuit summarized its framework as follows:
>
> [W]e conclude that eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test:
>
>> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either
>>
>>   (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>>
>>   (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>>
>> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) (internal citations omitted).

> To properly apply this framework, a court must engage in a four-step analysis:
>
> (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

*Id.* at 1100-01.

### B.     Application to Scott's case

#### 1.     Non-frivolous showing of a mental impairment

The Court previously decided the first step in Scott's favor and conducted an evidentiary hearing.  The Court is now in a position to properly evaluate whether Scott can satisfy the remaining three elements.  In doing so, the Court relies heavily on the testimony introduced during the evidentiary hearing.

#### 2.     Did Scott suffer from a mental impairment during the statutory filing period?

Scott has consistently been diagnosed with and treated for some type of major mental disorder related to delusional thoughts and auditory hallucinations.  While a number of experts and treating physicians testified at the evidentiary hearing, there is no disagreement that Scott is seriously mentally ill and most likely suffers from some form of schizophrenia.  His mental illness was present at the time of his incarceration and has not diminished to any significant degree since.  Thus, the Court resolves the second step in Scott's favor.

#### 3.     Did Scott's mental illness make it impossible for him to file a timely habeas petition?

The Court must next consider whether Scott's mental impairment made it impossible for him to file a timely habeas petition on his own or to utilize the assistance reasonably available to him to do so.

 After Scott pleaded guilty, he was sent to the KSR in LaGrange, Kentucky, where he was initially placed in the Correctional Psychiatric Treatment Unit (CPTU).  After several months, Scott was released into the general population.  He was placed in a cell that was in close proximity to his brother, Barry Scott.  Scott testified that a few days after being released from CPTU his brother took him to a legal aide named John Russell.  Russell told him that he first

9

needed to obtain his criminal records. Scott testified that he twice wrote his attorney, Vincent Yustas, to get records. Yustas did not respond to the letters. Scott also testified that he unsuccessfully wrote the circuit court multiple times for his complete records.

On recross-examination Scott admitted that had he known about the filing deadline under the AEDPA he could have filed a petition on his own behalf. Scott said it would have been prepared "basically on a piece of notebook paper." He then said that he was told he needed to have records before he filed: "But I was told I had to have what you-all had. I didn't need nothing you-all had. I knew what happened. I was there. Even though you-all had me doped up, I was there." When asked if he could have filled out a form, Scott stated that he could have done it. Scott admitted that the main problem was that he did not know about the filing deadline.

Upon review, the Court concludes that Scott had the ability to file a simple habeas petition had he known the proper time to do so as demonstrated by the fact that he was able to write to his attorney and the Graves Circuit Court Clerk. Scott's ignorance of the filing deadline appears to have been the actual impediment to complying with the AEDPA. The law in the Sixth Circuit is clear, however, that ignorance of the law is not sufficient to justify equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004).

**4.     Under the circumstances did Scott act diligently in filing his habeas petition?**

The last step requires the Court to determine whether Scott acted diligently in filing his habeas petition after he became able to do so. This final step is arguably the most important. "Diligence is the key to equitable tolling." *Huey v. Smith*, 199 F. App'x 498, 502 (6th Cir. 2006) (internal quotations omitted). The diligence required for equitable tolling purposes is "'reasonable diligence,' not 'maximum feasible diligence.'" *Holland v. Florida*, 130 S. Ct. at 2565 (internal citations omitted).

While equitable tolling can be used to excuse some delay, even equity has its limits. Equity cannot be used to keep a statute of limitations tolled into perpetuity. Equity does not "convey a right to an extended delay while a habeas petitioner gathers every possible scrap of evidence that might support his claim." *Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003). Rather, a petitioner relying on equitable tolling to save an otherwise time-barred habeas petition must demonstrate that he acted promptly in asserting his *federal* rights once the impediment that prevented him from filing has been lifted. *See Allen v. Yukins*, 366 F.3d at 404; *Cook v. Stegall*, 295 F.3d 517, 522 (6th Cir. 2002). "Equitable tolling does not *restart* the period of limitations . . . . Instead it permits deferral of suit until the tolling event ceases and requires diligent action thereafter." *Prime Eagle Group Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 379 (7th Cir. 2010) (citing *Pace v. DiGuglielmo*, 544 U.S. at 418-19).

Scott did not file a federal habeas petition until 2008; he filed a collateral attack in state court in 2005. Equitable tolling, however, is focused on promptness in asserting one's *federal* rights, not one's state court rights. *See, e.g.*, *Fuller v. Thomas*, 110 F. App'x 496, 499 (6th Cir. 2004) (stating that the petitioner had inappropriately "focuse[d] on his diligence in pursuing Ohio state court relief, not federal habeas relief"). Filing a post-conviction motion in state court does not restart § 2244(d)(1)'s one-year statute of limitations. *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003). "The tolling provision does not []'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Id.* at 602 (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)) (internal quotation marks omitted); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) ("[A]lthough the filing of

11

the motion for a delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to begin running anew when the state court denied the motion."). Thus, Scott's state filing (irrespective of its timeliness) did not restart the already expired statutory time period for filing a federal habeas petition.

A prisoner seeking state post-conviction relief may "file[] a 'protective' petition in federal court [] asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace v. DiGuglielmo*, 544 U.S. at 416. Scott should have heeded the Supreme Court's warning by filing a "protective" petition in federal court at that time and asking that it be stayed pending exhaustion in state court.

Instead, Scott failed to file anything in federal court for another three years, even after counsel was appointed to represent him in the state court proceeding. This is further evidence of Scott's lack of due diligence. *See, e.g.*, *Lakey v. Hickman*, 633 F.3d 782, 787 (9th Cir. 2011) ("*Pace* also explicitly advised state prisoners . . . to file a protective federal petition to avoid a possible timeliness bar. Despite this warning, Lakey waited nearly five months before filing his federal claims."). Such a lengthy delay cannot be excused.

For these reasons, by separate Order, the Court will dismiss this action as untimely filed.

### IV. CERTIFICATE OF APPEALABILITY

In the event Scott wishes to appeal any aspect of this Court's decision, he is required to obtain a certificate of appealability (COA). 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A district court must issue or deny and COA and can do so even though the petitioner has yet to make a request for such a certificate. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) ("Whether the district court judge determines to issue a COA along with the denial of a writ of habeas corpus or upon the filing of a notice of appeal, the district judge is always required to

comply with § 2253(c)(2)&(3) by 'indicat[ing] which specific issue or issues satisfy the denial of a constitutional right.' 28 U.S.C. § 2253(c)(2).").

When a district court dismisses a petition on procedural grounds without addressing the merits of the petition, a COA should issue if the petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a plain procedural bar is present and the district court is correct to invoke it to dispose of the matter, a reasonable jurist could not conclude either that the court erred in dismissing the motion or that the petitioner should be allowed to proceed further. *Id.*

Upon review, the Court concludes that no jurist of reason could find the Court's procedural ruling to be debatable. The case law is clear, and the facts introduced at the evidentiary hearing clearly established that Scott had the minimal ability to file a habeas petition. Consequently, the Court determines that a COA is not warranted in this case.

Date:



cc:     Counsel of record
4413.008